UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Angel Luis Cruzado, Father; I.P.C., Child,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Melissa Rogers; Nancy Weil,<br><br>　　　　　　　　Defendants. | CASE NO. 21-1071<br><br>ORDER GRANTING MOTIONS TO DISMISS |

This matter is before the Court on Defendant Nancy Weil's motion to dismiss, (Dkt. No. 18), and Defendant Melissa Rogers' motion to dismiss, (Dkt. No. 19). Having considered the motions, Plaintiff's responses, (Dkt. Nos. 35, 36), the replies, (Dkt. Nos. 37, 38), and the relevant record, the Court GRANTS the motions and ORDERS that Plaintiff's complaint is DISMISSED as follows:

1. Plaintiff's claims against Ms. Weil are dismissed under Rule 12(b)(1) because they are barred by quasi-judicial immunity;

2. Plaintiff's claims against Ms. Rogers are dismissed under Rule 12(b)(6) because he has failed to state a claim against her;

ORDER GRANTING MOTIONS TO DISMISS - 1

    3.      All of Plaintiff's claims are barred by judicial estoppel because he did not disclose them in his prior bankruptcy proceeding; and

    4.      Plaintiff cannot raise claims on behalf of his minor daughter because he is unrepresented.  These claims are dismissed without prejudice.

## Background

This is a tort action filed under diversity jurisdiction.  Plaintiff is suing the parenting evaluator and the attorney who represented the mother of his child in a Washington State family-court proceeding.  He seeks economic damages of $350,000, noneconomic damages, and punitive damages on claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. (Dkt. No. 6, Complaint, at 23.)  All of Plaintiff's claims concern actions Defendants took in their respective roles in the family-court proceeding.

Plaintiff and the mother of his minor child were opposing parties in a custody proceeding in King County Superior Court from 2017–19 and in Los Angeles County Superior Court in 2020.  Although Plaintiff is now pro se, both were represented in those cases.  (See Dkt. No. 19, Declaration of Jeffrey T. Kestle, Ex. 3.)  Defendant Nancy Weil was appointed by King County Superior Court to investigate the allegations of the parties and produce a report and recommendations. (Id., Ex. 2.)  Defendant Melissa Rogers was the attorney for the mother, and began representing her in 2018.

Ms. Weil produced her report in August 2018 and the court adopted a parenting plan in December 2018.  (Id., Ex. 4.)  Later on, Plaintiff, the mother, and their child all moved to California. (Compl. at 19.)  King County Superior Court relinquished jurisdiction to Los Angeles County Superior Court in June 2020. (Dkt. No. 35, Ex. T.)  The court in L.A. issued a new parenting plan in October 2020. (Compl., Ex. 1.)  Meanwhile, Plaintiff filed a bankruptcy proceeding in May 2020 and discharged debts in August 2020.  (Kestle Decl., Exs. 6–10.)

1   There are two motions to dismiss before the Court.  Ms. Weil argues Plaintiff's claims
2   are barred by the quasi-judicial immunity she was entitled to as a court-appointed parenting
3   evaluator and by judicial estoppel, because he did not disclose the claims in his bankruptcy
4   proceeding.  Melissa Rogers moves to dismiss for failure to state a claim and agrees all claims
5   are barred by judicial estoppel.  Defendants also seek dismissal of Plaintiff's claims on behalf of
6   his minor child.

## Discussion

### A. Quasi-Judicial Immunity

Under Washington law, "family court investigators performing court-ordered parenting evaluations act as an arm of the court and accordingly are entitled to quasi-judicial immunity from civil liability for acts undertaken in performing such parenting evaluations." Reddy v. Karr, 102 Wn. App. 742, 744 (2000) (affirming dismissal of negligence claim).  Plaintiff is suing Ms. Weil for actions she performed in her capacity as a court-appointed parenting evaluator. (See Compl. at 9 ("At all times relevant to the Father's claims Nancy Weil, a court appointed parenting evaluator appointed by Pro Tem Commissioner Cheryll Russell, acted within the scope and authority of the Court and all of her acts and omissions described in this Complaint were under color of law"); see also Kestle Decl., Ex. 2.)  Plaintiff's chief allegation is that she was negligent in producing a report to the court.

All Plaintiff's allegations concern actions Ms. Weil took in her capacity as a court-appointed investigator.  (See Compl. at 4–5, 7, 14, 21–22.)  His statement in opposition that Ms. Weil was a private investigator he hired is contradicted by his own exhibit, which shows she was appointed by the Court.  (Compl., Ex. 3; Kestle Decl., Ex. 2.)  Ms. Weil acted as an arm of the court and had no independent decision-making authority over Plaintiff.  Whatever her

recommendations, any decisions had to be made by the court. (See Kestle Decl., Exs. 2, 3.) The appropriate remedy for legal errors of a court-appointed investigator is the same as for legal errors of the court itself—to seek relief in that court or on appeal. See, e.g., In re Marriage of Black, 188 Wash. 2d 114, 126–127 (2017) (trial court abused its discretion when it credited guardian ad litem's report, recommendation, and testimony which reflected bias against mother's sexual orientation).

Plaintiff's claims are precisely the sort the Court of Appeals found to be subject to quasi-judicial immunity in Reddy v. Karr. As a result, Ms. Weil is entitled to quasi-judicial immunity from civil liability and Plaintiff's claims against her must be dismissed with prejudice.

**B.      Failure to State a Claim**

Defendant Melissa Rogers, the attorney who represented Plaintiff's wife in the family-court proceeding, moves to dismiss for failure to state a claim or, in the alternative, for a more definite statement. (Dkt. No. 21.) In her reply, she asks the Court to consider Plaintiff's response as an attempt to provide a more definite statement and to simply dismiss the Complaint. (Dkt. No. 38.)

Plaintiff's allegations against Ms. Rogers are that she filed motions to have him professionally supervised, "colluded" with Ms. Weil to have him arrested on domestic violence charges, and supported the mother in making false sexual-abuse allegations and police reports. In particular, he claims Ms. Rogers filed a motion with an "improper purpose with frivolous arguments that had no evidentiary support," which resulted in him being supervised in some manner, even though Ms. Rogers allegedly knew her client had made false allegations against him in the past. (Compl. at 5.)

1. *Negligence.*

To recover on a claim for negligence, a plaintiff must show "(1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." Lowman v. Wilbur, 178 Wn.2d 165, 169 (2013). Causation requires showing cause in fact and legal causation. Id. Plaintiff's claim for negligence must be dismissed. Even if he could show Ms. Rogers owed him a duty—a doubtful proposition—he cannot prove causation. His claim is essentially that Ms. Rogers filed a motion for a temporary restraining order without legal basis to help her client gain advantage in the case. He cannot show factual or legal causation because the court must review the motion, grant the interim relief, and decide it on the return date. The remedy for a deficient motion is for the court to deny it and, if warranted, sanction the attorney or party, or for Plaintiff to appeal a decision granting the motion. Plaintiff has no claim for negligence.

2. *Negligent infliction of emotional distress.*

To recover for negligent infliction of emotional distress, a plaintiff must prove all the elements of negligence plus the element of "objective symptomatology." That requires showing the plaintiff has suffered emotional distress that is "susceptible to medical diagnosis and proved through medical evidence." Kloepfel v. Bokor, 149 Wn.2d 192, 196–97 (2003). Because Plaintiff cannot show all the elements of negligence, Plaintiff's claim for negligent infliction of emotional distress must be dismissed as well.

3. *Intentional infliction of emotional distress.*

To recover for intentional infliction of emotional distress, a plaintiff must prove "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." Trujillo v. Nw. Tr. Servs. Inc., 183

Wn.2d 820, 840 (2015). "To establish extreme and outrageous conduct, a plaintiff must show that the conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (internal quotation marks omitted).

The fact that Plaintiff cannot show causation also defeats this claim. In addition, Plaintiff's allegations are not sufficiently outrageous. The standard is high and the relationship between the parties also matters. See Robel v. Roundup Corp., 148 Wash.2d 35, 51–52 (2002). Here, Ms. Rogers had a duty to her client, who had an adversarial relationship to Plaintiff, who was also represented by counsel. That is much different than situations where the defendant had authority or power over the plaintiff. Compare id. at 52 (jury could decide whether sexist and other disparaging comments made by supervisor and coworkers was sufficiently outrageous); see also, e.g., Thompson v. N. Am. Terrazzo, Inc., No. C13-1007 RAJ, 2015 WL 926575, at *13 (W.D. Wash. Mar. 4, 2015) (evidence of supervisor's racist insults was enough to leave question to jury). The context of litigation is so significant that some states recognize a litigation privilege that immunizes attorneys from tort liability for statements and actions taken during litigation. See Simms v. Seaman, 308 Conn. 523, 525–26 (2013) (recognizing litigation privilege for fraud and intentional infliction of emotional distress).

While Plaintiff states that he was discriminated against on the basis of race, he does not allege any specific facts indicating Ms. Rogers engaged in the actions he complains about because of his race. Given the adversarial nature of litigation—and the emotional stakes of custody proceedings in particular—Plaintiff would have to allege something more to support the element of "extreme and outrageous conduct." Plaintiff's claim for intentional infliction of emotional distress must be dismissed as well.

## C. Judicial Estoppel

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). The purpose of equitable estoppel is to "protect the integrity of the judicial process," and it is "invoked by a court at its discretion." Id. at 749–50. There are several factors which typically inform whether to apply judicial estoppel: (1) a party's later position is clearly inconsistent with its earlier position; (2) the party has persuaded a court to accept the earlier position; and (3) unfair advantage. Id. at 750–51. These factors are not "inflexible prerequisites or an exhaustive formula." Id. at 751. For example, judicial estoppem may not be appropriate "when a party's prior position was based on inadvertence or mistake." Id. at 753.

In bankruptcy, the Ninth Circuit's default approach is to apply judicial estoppel "if a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation)." Ah Quin v. Cty. of Kauai Dep't of Transp., 733 F.3d 267, 271 (9th Cir. 2013). The Ninth Circuit has recently explained the rationale:

> The reason is that the plaintiff-debtor represented in the bankruptcy case that no claim existed, so he or she is estopped from representing in the lawsuit that a claim does exist. That basic rule comports fully with the Supreme Court's decision in New Hampshire: (1) the positions are clearly inconsistent ("a claim does not exist" vs. "a claim does exist"); (2) the plaintiff-debtor succeeded in getting the first court (the bankruptcy court) to accept the first position; and (3) the plaintiff-debtor obtained an unfair advantage (discharge or plan confirmation without allowing the creditors to learn of the pending lawsuit). The general rule also comports fully with the policy reasons underlying the doctrine of judicial estoppel: to prevent litigants from playing "fast and loose" with the courts and to protect the integrity of the judicial system.

Id. In the bankruptcy context, the inquiry into inadvertence is narrow because the motive to conceal claims is "nearly always present." Id.

1       The Court takes judicial notice of records from the bankruptcy proceeding because they
2 are "not subject to reasonable dispute." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988,
3 1002 (9th Cir. 2018).  Plaintiff filed for bankruptcy in May 2020. (Kestle Decl., Ex. 6 at 1, Ex. 7
4 at 1.)  His petition shows he selected "no" when answering whether he had any "claims against
5 third parties, whether or not you have filed a lawsuit or made a demand for payment," a prompt
6 which included the following examples: "accidents, employment disputes, insurance claims, or
7 rights to sue." (Id., Ex. 6 at 20.)  And Plaintiff admits that he did not disclose his claims. (Dkt.
8 No. 35 at 20.)  The bankruptcy court discharged $126,505.25 in debts in August 2020. (Id., Exs.
9 11, 12.)  Plaintiff filed the Complaint in this action a year later, in August 2021. (See Compl.)

10       Judicial estoppel is appropriate here.  Although Plaintiff's arguments are not all coherent,
11 he is essentially arguing that his failure to disclose was inadvertent because he was not aware
12 that he had these claims when he filed for bankruptcy in May 2020.  He points to the fact that the
13 issues in his family-court case had not been fully decided when he filed—King County Superior
14 Court relinquished jurisdiction to California in June 2020, because all parties had relocated there,
15 and then Los Angeles County Superior Court issued a final parenting plan in October 2020.  That
16 does not quite stand up.  The report by Ms. Weil he complains of was completed in August 2018
17 and King County Superior Court had issued a parenting plan in December 2018. (Compl. at 12
18 & Ex. 2.)  And he has clarified that his claims against Ms. Rogers arose between August and
19 December 2018. (Dkt. No. 36 at 10.)

20       In any case, there is sufficient support for applying judicial estoppel.  For example,
21 Plaintiff cites bankruptcy as one factor that delayed him filing this Complaint, which indicates he
22 was aware he may have had a claim before filing for bankruptcy. (Compl. at 6.)  He also claims
23 Ms. Weil caused him to enter into bankruptcy, which further supports the conclusion that he
24

ORDER GRANTING MOTIONS TO DISMISS - 8

knew his claim had accrued before he filed. (Dkt. No. 35 at 24.) Finally, unlike in Ah Quin, Plaintiff did not reopen his bankruptcy proceeding to file amended schedules listing his claims as assets. Compare Ah Quin, 733 F.2d at 272. Because "the importance of full disclosure in bankruptcy proceedings cannot be overemphasized," judicial estoppel bars all of Plaintiff's claims, which must be dismissed with prejudice. Id. at 272–273.

### D. Claims Raised on Behalf of Minor Child

Plaintiff cannot bring any claims on behalf of his minor daughter because he is unrepresented. Johns v. Cty. of San Diego, 114 F.3d 874, 877 (9th Cir. 1997) ("a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer"). These claims must be dismissed without prejudice. See id. at 877.

***

The Court GRANTS both motions to dismiss. All of Plaintiff's claims are DISMISSED with prejudice, except for the claims he attempts to raise on behalf of his minor child. Those claims are DISMISSED without prejudice. The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

Dated February 22, 2022.

Marsha J. Pechman
United States Senior District Judge